# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-4246

CAROLYN D. SARTOR,

Plaintiff-Appellant,

v.

SPHERION CORPORATION,

Defendant-Appellee.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 4312—**Amy J. St. Eve**, *Judge.*

———————

ARGUED SEPTEMBER 9, 2004—DECIDED NOVEMBER 1, 2004

———————

Before EASTERBROOK, EVANS, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Carolyn Sartor, an African-American woman, filed suit against Spherion, her former employer, alleging intentional discrimination on the basis of sex and race. The district court granted summary judgment in favor of Spherion. We affirm.

Spherion provides business solution consulting and staffing services through branch offices in the United States and abroad. In early 2000 Sartor was hired to work in Spherion's Technology Division, which at the time consisted of three main practice groups: Software Quality Management ("SQM"), Enterprise Application Integration ("EAI"), and Information

Design Services ("IDS"). A fourth, smaller practice group provided assistance to health care clients and was known as the "HIPAA" group in reference to the federal Health Insurance Portability and Accountability Act. Spherion hired Sartor to serve as practice director of the Oak Brook, Illinois branch of the IDS group. Sartor later took on additional responsibilities as director of the Chicago IDS branch.

In late 2001, in response to significant losses, Spherion embarked upon a major reorganization designed to focus the company's resources on more profitable service lines. As part of the reorganization, the company eliminated the role of practice director and renamed the existing practice directors to positions as Business Development Directors ("BDDs"), thus expanding the alphabet-soup corporate lexicon. The purpose of this change was to focus the attention of these managers more on sales and less on supervision of the company's consultants. Sartor became BDD for the IDS group. Spherion hired David Anderson as its Chicago Area vice-president to help it through the general reorganization.

On or about January 9, 2002, Anderson and Sartor met to discuss the IDS practice group and Sartor's role. Anderson asked Sartor to provide him with a forecast of revenue opportunities for 2002, which she later did. Sometime in January 2002 (the record is uncertain exactly when), Spherion decided to eliminate the IDS, EAI, and HIPAA groups as separate entities and offer portions of the EAI and IDS services through a newly-formed group called Application Development Integration ("ADI"), to be headed by two BDDs. Although the plan called for most of the EAI service lines to be offered by the ADI group, almost all the IDS lines (Sartor's practice group) were to be discontinued. The SQM group was to remain intact.

On January 21, 2002, Anderson and Sartor discussed the elimination of Sartor's IDS group. Sartor told Anderson she wanted to become a BDD in the new ADI group, but Anderson

was noncommittal. Four days later, Anderson requested another meeting with Sartor. They met on January 31 and discussed the BDD position, as well as the possibility of a position as "branch delivery director." Unlike the BDD job, which involved pitching Spherion's services to clients and developing solutions for them, Spherion's delivery directors were responsible for the actual subsequent provision of services. It is not clear whether Anderson actually offered Sartor a delivery director position during the January 31 meeting. It is also unclear whether Anderson had already ruled out the possibility of Sartor remaining in her role as a BDD in the reorganized company. On February 4, 2002, Sartor e-mailed Anderson to ask for a description of the delivery director job; he sent it to her along with a request that she respond to him "with a final decision tomorrow" about her interest in that position.

Sartor met with Anderson the next day and told him she was better suited for the BDD position. Again Anderson requested sales forecast information from Sartor and again she obliged. But on February 11, when they next met in person, Anderson informed Sartor that he could not justify employing her as a BDD in the new ADI group and that her employment was therefore terminated.

Sartor sued Spherion in the district court, alleging unlawful discrimination on the basis of sex and race in violation of 42 U.S.C. § 1981 and 42 U.S.C. §§ 2000e, *et seq.* She also asserted breach of contract and statutory claims under Illinois state law. The district court granted summary judgment to Spherion on the federal discrimination claims and declined to exercise supplemental jurisdiction over the state law claims, dismissing them without prejudice. Sartor appealed the grant of summary judgment.

Our review of summary judgment is *de novo. Gordon v. United Airlines, Inc.*, 246 F.3d 878, 885 (7th Cir. 2001). We apply the same methodology as the district court. Summary

judgment will be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. PROC. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). We view all the facts and draw all reasonable inferences in favor of the nonmoving party. *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002). However, to survive summary judgment, the nonmoving party may not rely on mere allegations; she must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322-23.

Discriminatory intent may be proven directly or indirectly. The district court held that Sartor waived any argument under the direct method of proof by failing to offer anything beyond the "bald assertion" that Anderson displayed discriminatory animus toward Sartor. Alternatively, the court held that the evidence did not amount to direct proof of discriminatory intent. Sartor argues on appeal that she did not waive her argument under the direct method of proof because she presented circumstantial evidence of discriminatory intent. While it is true that a plaintiff may demonstrate discriminatory intent under the direct method of proof using circumstantial evidence, *see Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 1997), Sartor has failed to bring forward circumstantial evidence sufficient to survive summary judgment.

Sartor alleged that she was the only African-American employed at her level or above in the Technology Division of Spherion; as a result, while other employees were fired in the reorganization, she was the only African-American at her level who was terminated. She also notes that she was asked to provide revenue forecasts, while neither of the two white BDDs who were retained were required to do so. Finally, she points to the fact that Anderson fired her even though she had been promoted to BDD just weeks before Anderson took over as her supervisor. These facts, if true, do not constitute direct proof of discriminatory intent

sufficient to survive summary judgment.

A plaintiff constructing a circumstantial case of discriminatory intent under the direct method of proof must produce "a 'convincing mosaic' of circumstantial evidence" that points "directly to a discriminatory reason for the employer's action." *Id.* (quoting *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994) and *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003). In the context of a business undergoing a substantial reorganization, the fact that the sole black employee at a particular management level was not retained does not itself signal that the company was motivated to fire her because of her race. Likewise, and again in the context of a company engaged in restructuring, the fact that Sartor was asked to provide sales forecasts and her white counterparts were not does not "point directly" to a discriminatory reason for her eventual termination. Finally, Sartor's promotion to BDD just prior to the arrival of a new supervisor does not strike us as suspicious.

When direct evidence is lacking, a plaintiff may proceed under the indirect, burden-shifting method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Pasqua v. Metro. Life Ins. Co.*, 101 F.3d 514, 516 (7th Cir. 1996). Under *McDonnell Douglas* a plaintiff must initially establish a *prima facie* case of unlawful discrimination by a preponderance of the evidence. If she does this, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its adverse action against the plaintiff. *McDonnell Douglas*, 411 U.S. at 802. Such a reason, if unrebutted, defeats the plaintiff's claim. However, if the plaintiff can prove by a preponderance of the evidence that the employer's proffered explanation is a mere pretext for actual discrimination, *id.* at 803, then the employer is liable for the plaintiff's injuries.

To establish a *prima facie* case under *McDonnell Douglas*, the plaintiff must show: (1) that she is a member of a pro-

tected class; (2) that she was performing her job satisfactorily; (3) that she was the object of a materially adverse employment action; and (4) that similarly-situated employees outside the protected class were treated more favorably. *Id.* at 802; *Gordon*, 246 F.3d at 885-86. Spherion conceded the first three elements; the district court held that Sartor failed to show that any similarly-situated employee outside the protected classes was treated more favorably than she.

On appeal Sartor argues for the first time that because the BDDs who were retained in Spherion's restructuring absorbed some of her former job duties and are not in the protected class, she is not required to show that similarly-situated employees were treated more favorably, citing *Bellaver v. Quanex Corp.*, 200 F.3d 485, 495 (7th Cir. 2000). "We have long refused to consider arguments that were not presented to the district court in response to summary judgment motions." *Arendt v. Vetta Sports, Inc.*, 99 F.3d 231, 237 (7th Cir. 1996) (quoting *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992)).

This court has held that to be similarly situated for purposes of analysis under *McDonnell Douglas*, an employee must be "directly comparable in all material respects" to the plaintiff. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). Sartor has focused on the two employees who got the job she wanted as BDD of the newly-organized ADI group.

One of those individuals is Deb Simone, a white woman who served as BDD of the HIPAA practice group until its elimination. Simone had experience selling services offered under the SQM and EAI practice groups while serving as BDD of the HIPAA group. Since the new ADI group mainly would be selling services formerly offered under the EAI banner, Simone's knowledge and experience with EAI distinguish her from Sartor in a material respect. The fact that the ADI group would sell some of the service lines previ-

ously carried by Sartor's IDS group does not override the substantial differences in experience between the two women.

Sartor also points to Mike Smith, a white male, as a similarly-situated individual who was treated more favorably than she. Before the restructuring, Smith was BDD of the EAI group; like Simone, he became a BDD of the new ADI group. The company argues that Smith's expertise with the WebSphere platform, a major element of IDS's future service offerings, materially distinguishes him from Sartor, who admits to having no experience with WebSphere. Sartor contends that Smith's expertise with WebSphere is irrelevant because she had a proven record of sales of other products and the company failed to document a single sale by Smith of a WebSphere-based service. But Smith's expertise with a product that the company regarded as central to its future business plans makes him dissimilar to Sartor regardless of Sartor's other qualifications for the job. Smith need not have sold WebSphere in order to qualify himself to do so in the future, and whether Sartor's sales of other services somehow trumps Smith's expertise in WebSphere is not relevant to whether Smith and Simone are similarly situated in the legal sense. We will not question Spherion's business judgment that knowledge of the WebSphere product was crucial to the success of the new IDS group.

Sartor has failed to bring forward evidence that a similarly-situated employee was treated more favorably than she. As a result, she has failed to establish a *prima facie* case of intentional discrimination on the basis of sex or race. The decision of the district court granting summary judgment to Spherion is therefore AFFIRMED.

A true Copy:

**Teste:**

_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*