**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued January 16, 2009
Decided June 12, 2009

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DAPHNE BILAL,

|  |  |
|---|---|
| *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Illinois |

No. 06-2143

No. 03 C 9220

ROTEC INDUSTRIES, INC. and
ROBERT OURY

Charles P. Kocoras,
Judge.

*Defendants-Appellees.*

## ORDER

Daphne Bilal appeals the district court's dismissal of her Title VII retaliation claim and the entry of summary judgment against her with regard to her Title VII sex discrimination claims. For the reasons explained below, we affirm the judgment of the district court.

## I.      Background

In July 2001, Daphne Bilal was hired as a receptionist at Rotec Industries, Inc., a construction

equipment manufacturing company located in Elmhurst, Illinois. Defendant Robert Oury was the Chief Executive Officer of Rotec while Bilal was working at the company.   According to Bilal, Oury sexually harassed her throughout her employment at Rotec.  In late October 2002, Bilal accused her immediate supervisor, Chesterine Lombardo, of throwing a newspaper at her, which Lombardo denied.  In a meeting about the incident, at which Bilal, Lombardo, and Oury were present, Bilal and Lombardo got into an argument, and Bilal was fired, supposedly for insubordination.[1]

Bilal filed a complaint with the EEOC, was issued a right-to-sue letter, and filed a five-count complaint in the district court.  Bilal's complaint alleged that Rotec and Oury had created a hostile work environment and had engaged in discrimination and retaliation against her on the basis of her gender in violation of Title VII.  The complaint also  contained state law claims against Oury for battery, assault, and intentional infliction of emotional distress.

The complaint painted a vivid picture of the sexual harassment and abuse Bilal had allegedly endured.  Bilal stated that shortly after she was hired at Rotec, Oury made sexual comments about her "ass" and what he would do with her "ass" if given an opportunity. Oury allegedly called her a "useless tease" and told her "he knows exactly what to do with a tease."  Bilal claimed that he also referred to her, at one point, as his "beautiful, black, long-legged stallion."   The complaint stated that Oury told Bilal, quite bluntly, that if she had sex with him it would make her job better.   According to Bilal, Oury invited her to dinner and drinks on numerous occasions (which she declined).

Bilal also alleged that Oury touched her sexually without her consent on three occasions. Bilal stated that Oury touched her thigh and caressed her buttocks while Bilal informed him of a phone call.  She also claimed that on another occasion Oury walked behind her desk and rubbed his genitalia through his clothing against her arm.  Finally, in a particularly bizarre incident, Bilal claimed that Oury once took a chocolate out of his mouth and placed it in Bilal's mouth while she was speaking.

On June 3, 2004, the district court dismissed the retaliation claim because Bilal had failed to allege retaliation in her EEOC complaint. The parties proceeded with discovery on the other claims and defendants deposed Bilal.  During her deposition, Bilal testified to many of the

---

[1] There appears to be some dispute about who fired Bilal.  Plaintiff claims that Oury fired her; defendants claim that Oury gave Lombardo authority to terminate plaintiff.  *See* D.E. 83 ¶ 23. However, whether it was Oury or Lombardo who actually fired Bilal does not appear to be material.

incidents alleged in her complaint. She testified that Oury called her inappropriate sexual names, made numerous insulting comments, and touched her in an offensive and sexual manner on several occasions. According to Bilal's testimony, Oury twice rubbed his genitals against her, once touched her upper thigh, and once touched her buttocks with his hand. She also recounted that Oury once took a piece of chocolate from his own mouth and placed it in hers.

After the close of discovery, defendants filed a motion for summary judgment on plaintiff's remaining Title VII claims. Surprisingly, and without apparent cause, despite the numerous allegations of harassment in her complaint and deposition testimony, in her brief in opposition to summary judgment, Bilal presented only a cursory argument (comprising one paragraph) regarding her hostile work environment claim. Indeed, the district court found (and our own investigation confirms) that her Local Rule 56.1 filings provided evidence of only a few of the incidents in her complaint and deposition testimony. (Northern District of Illinois Local Rule 56.1 requires a party opposing summary judgment to file a statement of facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.) Specifically, she presented evidence that Oury invited her to watch the Chicago marathon with him (a non-business event) and called her a "fox." She provided evidence that Oury made inappropriate comments to her, once stating that her job would be easier if she had sex with him and once saying that he wished she would quit her job at Rotec so that he could "have" her and "nobody would have anything to say." Finally, she substantiated her claim that at one point, Oury took a piece of chocolate from his mouth and put it into Bilal's mouth while she was speaking. Summary judgment filings also revealed that Bilal testified that Oury's harassment did not affect her ability to do her work and that at the time she was fired she did not want to lose her job (though she had trepidation about working with Oury).

In analyzing the summary judgment issues, the district court considered only the parties' briefs and those portions of the record cited in the parties' Local Rule 56.1 statements of fact. On March 24, 2006, the district court granted summary judgment to the defendants. The district court declined to exercise supplemental jurisdiction over the remaining state law claims and dismissed the case. Bilal appeals.

## II. Discussion

### A. Dismissal of the Retaliation Claim

The district court dismissed Bilal's retaliation claim because she did not indicate on her EEOC form (either by checking the appropriate box or by describing such conduct in her narrative-form allegations) that she was pursuing such a claim. Bilal argues that the

defendants were privy to communications "between the EEOC, its investigators, and Daphne [Bilal]," that should have put them on notice of a retaliation claim and that the district court thus erred in dismissing the claim. We review a district court's decision to dismiss de novo, looking to see whether relief is possible under any set of facts consistent with the allegations set forth in the complaint. *Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment v. Union Pac. R.R. Co.*, 522 F.3d 746, 750 (7th Cir. 2008).

"'Generally a plaintiff may not bring claims under Title VII that were not originally brought among the charges to the EEOC.'" *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002) (quoting *Harper v. Godfrey Co.*, 45 F.3d 143, 147-48 (7th Cir. 1995)). This rule affords an opportunity for the EEOC to settle the dispute between the employee and employer and also puts the employer on notice of the charge against it. *Id.* In analyzing whether allegations in a complaint were among the charges brought before the EEOC, we look to the substance of the charges, not merely whether a particular box was checked on the EEOC form. *See Jenkins v. Blue Cross Mut. Hospital Ins., Inc.*, 538 F.2d 164, 168 (7th Cir. 1976) (en banc) (holding that "the failure to place a check mark in the correct box" is not necessarily a "fatal error").

On her EEOC form, Bilal checked the box indicating a claim of sex discrimination, but did not check the box indicating a claim of retaliation. Bilal's description of the charges she wished to bring likewise contained no allegation of retaliation:

> I am a former employee of Rotec Industries, Inc. and a woman. I worked in the Elmhurst, Illinois office. I have been subjected to unwanted touches and sexual comments by the owner and CEO of Rotec.
>
> Since August, 2001, on a continuous basis until my termination on October 30, 2002, I have been harassed, and subjected to a hostile work environment on account of my sex. I have been treated differently than non-woman employees.
>
> The actions of Rotec violate my rights under Title VII of the Civil Rights Act.

This description – which clearly states a complaint for discrimination and hostile work environment – does not give notice of a retaliation claim. It does not mention any grievances lodged with her employer or an agency that could reasonably be understood as statutorily protected activity. It contains no hint that such complaints caused her termination. Drawing

all reasonable inferences in favor of Bilal, the only part of her charge that even partially presents an element of retaliation is the mention of her termination in the second paragraph of her statement. But, as the district court recognized, termination can occur for any number of reasons, most of which are perfectly legal. Thus, we find that Bilal's EEOC complaint was insufficient to put Rotec or the EEOC on notice that Bilal was claiming retaliation.

Bilal argues that defendants' knowledge of certain communications between Bilal and the EEOC put defendants on notice of the retaliation charge. But Bilal does not describe the context or content of these supposed communications and they do not appear to be a part of the record on appeal. Moreover, considering these supposed communications would have required the district court to consider facts outside of Bilal's complaint, a step that would have been improper when deciding a motion to dismiss. *See, e.g.*, *Jacobs v. City of Chicago*, 215 F.3d 758, 765-66 (7th Cir. 2000).

Because Bilal's EEOC complaint failed to give the EEOC or defendants notice that she was pursuing a retaliation claim, we affirm the district court's dismissal of that claim.

## B.  Denial of Leave to File a Second Amended Complaint

Bilal requested leave to file a second amended complaint on June 16, 2004, after the district court dismissed her retaliation claim. The district court denied leave. Bilal claims that she could have added relevant facts to substantiate her claim of retaliation. We review a district court's denial of a request for leave to amend for an abuse of discretion. *See Indiana Funeral Dirs. Ins. Trust v. Trustmark Ins. Corp.*, 347 F.3d 652, 655 (7th Cir. 2003).

Federal Rule of Civil Procedure 15(a) states that leave to amend a pleading shall be freely given "when justice so requires." Fed. R. Civ. P. 15(a). The rule also expressly grants a plaintiff an opportunity to amend her complaint "once as a matter of course before being served with a responsive pleading." *Id.*; *Camp v. Gregory*, 67 F.3d 1286, 1289 (7th Cir. 1995).

Here, the district court's denial of leave was not an abuse of discretion because the district court had already allowed Bilal to amend her complaint once, and, more importantly, it does not appear that any amendment could have cured the deficiency of the retaliation claim discussed above: that is, Bilal's failure to indicate that she was pursuing a retaliation claim in her EEOC complaint.

We therefore affirm the district court's denial of leave to amend.

### C.  Denial of Motion to Compel

During discovery, Oury was deposed but refused to answer certain questions.  Bilal moved to compel Oury to answer questions regarding his consensual sexual relationships.  In its decision, the district court first took note that Bilal made little or no effort to resolve the situation without court intervention, which alone justified denial of the motion.  *See* Fed. R. Civ. P. 37(a)(2)(B) (2005) (requiring movant to provide a statement that he "has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action").  As to the merits, the court denied the motion, finding that defendants had met their discovery obligations.  Although her argument on appeal is a bit murky, Bilal appears to argue that the district court erred in denying her motion to compel.  We review a decision of a district court denying a motion to compel for abuse of discretion.  *See Gile v. United Airlines Inc.*, 95 F.3d 492, 495 (7th Cir. 1996).

As an initial matter, the district court was correct that denial of the motion to compel was justified by Bilal's failure to comply with then-Rule 37(a)(2)(B).  *See Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1059 (7th Cir. 2000) (because movant's motion did not include a Rule 37(a) certification, the district court did not abuse its discretion in denying the motion to compel).  The district court was also correct on the merits.  The district court found that Bilal's questions about Oury's sexual relationships were overbroad because they contained no time limitations and could have elicited information about his sex life stretching back 38 years or more.  Oury proposed that his answers be limited to the ten years prior to Bilal's suit (including six years pre-dating Bilal's employment at Rotec), a limitation the district court found to be reasonable.  Bilal argues, in extremely summary fashion, that the district court should have granted her motion to compel and should not have imposed its "abritrar[y]" time limits.  However, although discovery is broad, it is not boundless, and the remoteness in time of the requested information was a legitimate factor for the district court to take into account.  Such limitation was not an abuse of discretion.

### D.  Grant of Summary Judgment to Defendants

Summary judgment is appropriate only if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). We review the district court's grant of summary judgment de novo, construing all facts and inferences in the light most favorable to the nonmoving party.  *Clancy v. Geithner*, 559 F.3d 595 (7th Cir. 2009).

#### 1.  Hostile Work Environment

The district court found that the evidence presented by Bilal in response to summary

judgment did not meet this circuit's threshold for finding a workplace "hostile." After reviewing the evidence presented by the plaintiff, we find that we have no choice but to affirm.

At the outset, we note what should be apparent from our recitation of the facts: that Bilal's attorney appears to have advanced her case with a less than adequate performance. As recounted above, although counsel alleged numerous incidents of harassment in the complaint, and although Bilal testified to many of those incidents (and others) at her deposition, counsel failed to provide evidence of most of those incidents in Bilal's summary judgment filings. The district court, acting under Local Rule 56.1, confined its analysis to those few listed incidents and found that they were insufficient to create a hostile work environment. Unwisely, indeed inexplicably, Bilal's attorney did not seek to supplement his opposition brief or statement of facts after the district court's ruling.

In this court, Bilal's briefs describe numerous alleged incidents of harassment not considered by the district court, but do not challenge the district court's determination that only a few incidents were properly presented under Local Rule 56.1. However, even if Bilal had challenged on appeal the district court's confinement of its consideration to these incidents, it would have been to no avail. Our own review of the summary judgment filings confirms that the district court did not err, let alone abuse its discretion, when it found that Bilal had presented only limited incidents of harassment under Local Rule 56.1. We have consistently upheld district courts' discretion to require strict compliance with that rule, *see Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (collecting cases), and have also held that district courts are not obliged to go beyond parties' Rule 56.1 statements by conducting their own investigation of the record, *see Cracco*, 559 F.3d at 632 ("[N]either appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes.") (citing *Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001)). District courts' discretion to limit their consideration to parties' Local Rule 56.1 submissions is especially important in employment discrimination cases, which are by their nature "extremely fact-intensive." *Id*.

In short, it is lamentable that what appears to have been a robust claim for hostile work environment was so significantly weakened by the inadequate response to the summary judgment motion of the defendants. However, we find no error in the district court's limitation of the analysis and thus proceed to review this claim in light of only the incidents plaintiff presented to the district court.

Hostile or abusive work environments are forms of sex discrimination actionable under Title VII of the Civil Rights Act of 1964. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986).

To prevail on her claim for hostile work environment, Bilal must show: "'(1) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the harassment was based on [the individual's] sex; (3) the sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance in creating an intimidating, hostile or offensive working environment that affected seriously the psychological well-being of the plaintiff; and (4) there is a basis for employer liability.'" *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 355 (7th Cir. 2002); (quoting *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998) (citations omitted)).

Bilal's evidence in response to summary judgment established the first, second, and fourth elements. Whether the incidents satisfied the third requirement – that the sexual behavior "had the effect of unreasonably interfering with the plaintiff's work performance in creating an intimidating, hostile or offensive working environment that affected seriously the psychological well-being of the plaintiff" – is a closer question.

Not all workplace conduct that may be described as harassment is actionable under Title VII. In considering whether a defendant's conduct rendered a workplace hostile we look to whether the treatment was so "severe or pervasive" as to alter the conditions of the victim's employment in a significant way. *See Vinson*, 477 U.S. at 67. Whether the environment was so hostile as to be actionable depends on the totality of the circumstances including the nature of the harassment and the context in which it occurred. *Id*. at 69; *Lapka v. Chertoff*, 517 F.3d 974, 982 (7th Cir. 2008) (courts should evaluate a plaintiff's claim of hostile work environment in light of the "particular facts and circumstances" of the case) (citations omitted).

Here, of the five alleged incidents presented to the district court, two occurrences were relatively innocuous. Oury's statement that Bilal was a "fox," while inappropriate for the workplace, is not the type of offensive conduct that typically underlies a successful hostile work environment claim. *See Kampmier v. Emeritus Corp.*, 472 F.3d 930, 941 (7th Cir. 2007) ("[O]ccasional vulgar banter, tinged with sexual innuendo of coarse or boorish workers generally does not create a work environment that a reasonable person would find intolerable.") (internal quotation marks and citation omitted). Likewise, Oury's invitation to Bilal to join him while watching the Chicago marathon cannot, without more, be considered harassment. However, the remaining three incidents are more serious in nature. As recounted above, Oury once stated that Bilal's job would be easier if she had sex with him and on another occasion he told her that he wished she would quit her job at Rotec so that he could "have" her. In a third quite troubling incident, Oury took a piece of chocolate from his mouth and placed it in Bilal's mouth while she was speaking.

However, while these three incidents would unquestionably be found offensive, we are unable to conclude that the district court was in error in determining that they are not sufficient to sustain a claim for hostile work environment under this circuit's case law. First, we note that the objectionable incidents were set apart over the course of her employment, which lasted over fourteen months. Bilal simply did not present, in her opposition to summary judgment, evidence of the sustained series of sexual or intimidating conduct that was referenced in her complaint and deposition testimony. *See Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 533, 537 (7th Cir. 1993) ("[R]elatively isolated instances of non-severe misconduct will not support a hostile environment claim").

Second, under the case law of this circuit, we are unable to conclude that these three alleged incidents, which we are unfortunately limited to on appeal, were, standing alone, so severe that they created a hostile working environment. *Hall*, 276 F.3d at 355. As noted, Oury's verbal comments, though clearly boorish and unprofessional, were not the type of humiliating or threatening statements that could be considered severe in isolation. *See Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993) (courts should consider whether a statement is "physically threatening or humiliating, or a mere offensive utterance").

The most disturbing of the events plaintiff presented, the "chocolate incident," likewise does not rise to the level that a finder of fact could label Bilal's work environment hostile on that basis alone. We have stated that "[p]hysical harassment lies along a continuum just as verbal harassment does." *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 808 (7th Cir. 2000). At one end of the spectrum are forms of physical contact which, although unwelcome and uncomfortable for the person touched, are relatively minor. *Id.* (giving as examples "a hand on the shoulder, a brief hug, or a peck on the cheek"). But even cruder or more intimate physical acts, such as a hand on the thigh, a kiss on the lips, or a pinch of the buttocks – may be considered insufficiently abusive to be described as "severe" when they occur in isolation. *Id*. (collecting cases); *see also Patton v. Keystone RV Co.*, 455 F.3d 812, 817 (7th Cir. 2006) (noting that we have held "middle-of-the-continuum physical contact . . . [to be] insufficient in isolation to constitute a hostile environment") (collecting cases). At the other end of the spectrum lie forced physical contact and touching of sexual body parts, which may be sufficient, even in isolation, to support a claim of hostile work environment. *See, e.g., Worth v. Tyer*, 276 F.3d 249, 268 (7th Cir. 2001) (touching the "breast near the nipple for several seconds" is severe enough to constitute a hostile environment by itself); *Patton*, 455 F.3d at 817 (defendant groping under plaintiff's shorts and touching her underwear "might be sufficient alone to create an abusive working environment").

When placed in this context, we are forced to conclude that Oury's alleged act of taking a chocolate out of his mouth and placing it in Bilal's, while bizarre and disgusting, was

"middle-of-the-continuum" physical contact which, because it occurred in relative isolation, cannot be regarded as severe under the existing case law. *See, e.g., McPherson v. City of Waukegan*, 379 F.3d 430, 434, 439 (7th Cir. 2004) (supervisor pulling back plaintiff's shirt to see the type of bra she was wearing was insufficient to constitute hostile work environment because of the relative isolation of the incident); *Adusumilli v. City of Chicago*, 164 F.3d 353, 361-62 (7th Cir. 1998) ("four isolated incidents in which a co-worker briefly touched her arm, fingers, or buttocks" was insufficient); *Koelsch v. Beltone Elecs. Corp.*, 46 F.3d 705, 706-08 (7th Cir. 1995) (one incident in which supervisor rubbed foot against plaintiff's leg and another where he grabbed plaintiff's buttocks was insufficient); *Weiss v. Coca-Cola Bottling Co.*, 990 F.2d 333, 337 (7th Cir. 1993) (assuming, despite contradictory deposition testimony, that two attempts by a supervisor to kiss the plaintiff were insufficient). Bilal's testimony, that despite Oury's inappropriate conduct, she was able to do her job effectively and had no desire to leave her job at the time she was terminated, lends some support to our conclusion that these three incidents were not sufficiently severe so as to alter the conditions of her employment and create an abusive working environment. In short, because our review of Oury's conduct is limited to these three incidents, we are unable to find that it was sufficient to sustain Bilal's hostile work environment claim.

As the Supreme Court has recognized, whether a work environment is hostile is not susceptible to a mathematically precise test. *Harris*, 510 U.S. at 22. This was a most troubling case and we emphasize that our decision should not in any way be interpreted as dismissing what, if true, can only be regarded as offensive behavior. We suggest only that if Bilal had presented additional evidence of harassment, (indeed, if her attorney had included even a portion of the incidents she testified about at deposition in her Local Rule 56.1 statement), she likely would have avoided summary judgment and preserved her case for the jury. Despite the concern expressed above, we are not permitted to compensate for Bilal's attorney's inadequate performance or set aside the directions given and constraints imposed by the law of this circuit. Because Bilal's *cognizable* evidence did not meet the standard set by our precedent, we have no choice but to affirm the district court.

### 2.     Termination of Bilal's Employment

The district court ruled that Bilal failed to present sufficient evidence that she was terminated on the basis of her gender under either the direct or indirect methods of proving discrimination. Bilal contests this ruling and claims she should prevail under either method.

For the direct method, Bilal must show either through direct or circumstantial evidence that impermissible consideration of her gender motivated her termination. *See Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 938-39 (7th Cir. 2003). Where there is no direct evidence of an

employer's discriminatory animus, a "convincing mosaic of circumstantial evidence that points directly to a discriminatory reason for the employer's action" may suffice. *Sartor v. Spherion Corp.*, 388 F.3d 275, 278 (7th Cir. 2004) (internal quotation marks and citations omitted). Bilal argues that she has satisfied the direct method of proof because "the record reflects that Oury stated to her that he could make her problems go away at work, if she complied with his sexual advances – and then terminated Daphne after she rebuffed him." But this is not evidence that "points directly" to a discriminatory reason for Bilal's termination. *Sartor*, 388 F.3d at 278. Without more to tie Bilal's rejection of Oury to her firing, there is insufficient direct evidence that discriminatory animus motivated his termination.

Bilal also fails to establish that genuine issues of material fact exist under the indirect method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, (1973). Under that test, the plaintiff must establish a prima facie case of discrimination. *See Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir.2002). With the prima facie case established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the discharge. *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004). The plaintiff can then present evidence that the reason is pretextual. *Id*. In order to make her prima facie case, Bilal must show that: (1) she was a member of a protected class; (2) she was performing his job satisfactorily; (3) she experienced an adverse employment action; and (4) similarly situated individuals were treated more favorably. *Traylor*, 295 F.3d at 788.

Here, even assuming that Bilal could satisfy the first three prongs of the prima facie test,[2] she has failed to satisfy the fourth prong. In order to satisfy the fourth part of the prima facie case, a plaintiff must show that similarly situated individuals were treated more favorably than she was. Bilal claims that Rotec employees Larry Bey and Edward Roman were similarly situated individuals who were treated more favorably. However, other than identifying Roman as a Human Resources representative and purchasing manager, Bilal presents nothing in her appellate brief (and presented nothing in her summary judgment brief or Rule 56.1 statement below) to show why these employees were similarly situated or how they were treated more favorably. Thus, the district court correctly granted summary judgment to

---

[2] We have some doubt as to whether Bilal could have satisfied the second prong, as she admitted that she engaged in an argument with her supervisor, Chesterine Lombardo immediately before she was terminated. *See Stringel v. Methodist Hosp.*, 89 F.3d 415, 418 (7th Cir. 1996) (insubordination is a legitimate reason for discharge). But we need not consider this issue at length since Bilal has clearly failed to meet her burden of showing similarly situated individuals were treated more favorably.

defendants on the discrimination claim.

## III.  Conclusion

For the reasons explained above, we **AFFIRM** the judgment of the district court.