In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3827

KEVIN CRACCO,

*Plaintiff-Appellant*,

*v.*

VITRAN EXPRESS, INCORPORATED,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 756—**Samuel Der-Yeghiayan**, *Judge*.

ARGUED SEPTEMBER 26, 2008—DECIDED MARCH 17, 2009

Before RIPPLE, MANION and SYKES, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Kevin Cracco brought this action against Vitran Express, Inc. ("Vitran") for violating the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, by terminating his employment upon his return from a medical leave. The district court entered an order of default against Vitran. However, before the district court entered a final judgment, Vitran filed a motion to vacate the default order. The district court granted that motion and, later, granted summary judgment in

favor of Vitran. Mr. Cracco filed a timely appeal. For the reasons set forth in this opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A.

In 1991, Vitran, a trucking company, hired Mr. Cracco. He later became a Service Center Manager for Vitran's Markham, Illinois terminal. On October 5, 2006, while serving in that capacity, Mr. Cracco was hospitalized with a serious health condition that rendered him temporarily unable to work. He requested approval from Vitran to take medical leave under the FMLA; Vitran approved his leave and, during the leave period, continued to pay him as provided by the company's salary continuation policy.[1]

Vitran hired several replacement employees to cover Mr. Cracco's job responsibilities. According to Vitran, as these employees undertook Mr. Cracco's responsibilities, they discovered several problems. "[T]he terminal was disorganized, employees were not following procedures, freight was sitting on the dock, damaged freight was hidden in trailers, safety concerns were noted, customers

---

[1] Under the policy, Vitran employees taking FMLA leave receive twenty-eight days of full pay and fifty percent pay thereafter.

were complaining and overtime was not being handled properly." R.38 at ¶ 33.

One of the replacement employees, Steve Perry, discovered discrepancies in the freight documents maintained by Mr. Cracco. He noticed that there were several shipments that Mr. Cracco had entered into the system as "waiting for an appointment"; however, the shipments were not appointment deliveries, but, rather, were deliveries that had not been made on time. Appellee Br. 7. Perry also noticed that Mr. Cracco had entered many of the freight deliveries as "delivered clear" when, in fact, the freight delivery receipt showed that they were delivered late, damaged or incomplete. *Id.* at 8. Mr. Cracco disputes that he falsified any records.

Perry subsequently contacted John Hartman, Vitran's Vice-President of Operations, regarding the discrepancies. Hartman examined a thirty-day sample of freight delivery receipts and compared them to the corresponding computer entries made under Mr. Cracco's computer log-in code. The freight delivery receipts reflect the date and actual quality of the delivery.

Hartman's examination uncovered problems similar to those described by Perry. He also discovered that Mr. Cracco had identified shipments as "drop" deliveries to customers who never received deliveries in such a fashion. Appellee Br. 9. In addition, Hartman observed that the majority of Mr. Cracco's computer entries were late at night and within minutes of each other. These findings led Hartman to conclude that Mr. Cracco's entries were not errors, but, rather, Mr. Cracco's deliberate attempts to disguise late and damaged deliveries.

Hartman traveled to the Markham terminal where he observed the problems that Perry had described. He later spoke with Chuck Weber, a former Regional Vice-President and one of Mr. Cracco's past supervisors, who stated that, in 2005, Mr. Cracco had refused to admit that he was responsible for problems at the terminal. Hartman discussed his findings with employees in Vitran's Human Resources department and with Richard Gray, the Assistant Vice-President of Operations. At Hartman's request, Gray reviewed the sample of freight records and agreed with Hartman's findings. On November 13, 2006, the day that Mr. Cracco returned from medical leave, Vitran terminated his employment.

**B.**

Mr. Cracco brought this action against Vitran, alleging that the company interfered with his FMLA rights by failing to restore him to his previous position and retaliating against him by terminating his employment. Vitran did not file a response, and the district court consequently entered an order of default against Vitran. However, prior to the court's entry of final judgment, Vitran filed a motion to vacate the default order. Vitran initially told the court that it had no record of having received the summons and complaint from its registered agent. Later, it clarified that its registered agent had received the summons and complaint, but that the documents had been forwarded to employees who did not understand their significance. The district court granted Vitran's motion and vacated the order of default.

Vitran later moved for summary judgment and filed a Local Rule 56.1(a) statement. In Paragraph 33 of its statement of material facts, Vitran stated:

> When [the replacement] employees arrived at the Markham terminal, they discovered several problems. The terminal was disorganized, employees were not following procedures, freight was sitting on the dock, damaged freight was hidden in trailers, safety concerns were noted, customers were complaining and overtime was not being handled properly.

R.38 at ¶ 33. In his response, Mr. Cracco objected to Paragraph 33 on the ground that it violated Rule 56.1 because it was not short and concise, but, rather, constituted a compound paragraph alleging multiple facts. Mr. Cracco moved to bar the use of evidence in the form of printouts of computer screens that allegedly showed entries made under his login name, as well as printouts of shipment delivery receipts that contained handwritten notations.

On October 24, 2007, the district court granted Vitran's motion for summary judgment. The court deemed Paragraph 33 admitted by Mr. Cracco and held that he failed to establish a retaliation claim under either the direct or indirect method of proof. The court further held that Mr. Cracco could not prevail on his interference claim because there was undisputed evidence that Mr. Cracco had been terminated for performance issues unrelated to taking FMLA leave. The court denied as moot Mr. Cracco's motion to bar evidence because it had not relied upon that evidence in granting summary judgment. Mr. Cracco filed this appeal.

## II

## DISCUSSION

We review evidentiary rulings and decisions regarding compliance with local rules for an abuse of discretion. *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 775 (7th Cir. 2006); *Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1108 (7th Cir. 2004).

On appeal, Mr. Cracco challenges the district court's decision to vacate the order of default, its decision to deem admitted Paragraph 33 of Vitran's statement of material facts, its grant of summary judgment in favor of Vitran on Mr. Cracco's retaliation and interference claims under the FMLA, and its finding that Mr. Cracco's motion to bar evidence is moot. We shall address each of these issues in turn.

## A.

We first examine the district court's decision to vacate the order of default against Vitran. Mr. Cracco submits that Vitran did not make a sufficient showing in its motion to vacate the order of default to warrant the district court vacating the default order. He maintains that Vitran was required to make a showing of a meritorious defense. He claims that Vitran's general statement that he was terminated for cause was insufficient to meet this burden and that Vitran needed to present a developed legal and factual basis for its assertion that Mr. Cracco was terminated for cause. *See Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994).

Federal Rule of Civil Procedure 55(c) states: "The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." We are concerned only with Rule 55(c) because the district court did not enter a final default judgment awarding damages to Mr. Cracco. *See Merrill Lynch Mortgage Corp. v. Narayan*, 908 F.2d 246, 252 (7th Cir. 1990). The calculus involved in Rule 55(c) decisions, as with Rule 60(b) decisions, "leads us to give great deference to the district court's eventual decision." *See Swaim v. Moltan Co.*, 73 F.3d 711, 722 (7th Cir. 1996) (applying Rule 60(b)). We shall reverse such a determination only if the district court abused its discretion. *Sun v. Bd. of Trs. of the Univ. of Ill.*, 473 F.3d 799, 810 (7th Cir. 2007).

A party seeking to vacate an entry of default prior to the entry of final judgment must show: "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Id.* (citing *Pretzel & Stouffer v. Imperial Adjusters, Inc.*, 28 F.3d 42, 45 (7th Cir. 1994)); *see also* Fed. R. Civ. P. 55(c). While the same test applies for motions seeking relief from default judgment under both Rule 55(c) and Rule 60(b), the test "is more liberally applied in the Rule 55(c) context." *United States v. Di Mucci*, 879 F.2d 1488, 1495 (7th Cir. 1989). Our cases articulate a policy of favoring trial on the merits over default judgment. *Sun*, 473 F.3d at 811 (citing *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1205 (7th Cir. 1984) (collecting cases)).

To have the entry of default vacated, Vitran must show that it had good cause for the late submission of its

answer and that it acted in a timely fashion to have the default order set aside. These two inquiries are not in serious contention. Vitran has shown good cause for the lateness of its answer; it did not willfully ignore the pending litigation, but, rather, failed to respond to the summons and complaint through inadvertence. *See Passarella v. Hilton Int'l Co.*, 810 F.2d 674, 677 (7th Cir. 1987). Although Vitran should have taken measures to ensure that service of process on its registered agent was forwarded to the appropriate employee, there is no evidence that it acted willfully when it failed to respond to Mr. Cracco's complaint. Vitran also acted in a timely fashion to have the default order set aside. It filed its motion only eight days after the court entered an order of default, on the day that it learned about the legal proceeding.

Vitran next must establish that it had a meritorious defense to the complaint. Vitran's motion to vacate the order of default stated:

> Defendant has a meritorious defense to the claims asserted by the Plaintiff. Plaintiff was not terminated in retaliation for asserting rights under, or in violation of, the Family and Medical Leave Act. Rather, Plaintiff was terminated for cause following the conclusion of all leave awarded to him under the Act.

R.17 at ¶ 6. In Vitran's answer, which was filed the following day, Vitran stated "that while Plaintiff was on leave, it discovered numerous facts and issues substantiating its decision to terminate Plaintiff, and upon the conclusion of his FMLA leave, Plaintiff was terminated for cause."

R.21, Ex. 1 at ¶ 12. Vitran did not provide any details about the facts supporting its decision to terminate Mr. Cracco.

Given the lenient standards that we have established for the application of Rule 55(c), we believe that Vitran made a sufficient showing of a meritorious defense. When the motion to vacate is read in conjunction with Vitran's answer, Vitran's explanation for its decision cannot be characterized as so conclusory as to be fatal. Rather, it notified the plaintiff and the district court of the nature of Vitran's defense and provided the factual basis for that defense. *See Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001); *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984). The district court acted well within its discretion in determining that the purpose and intent of Rule 55(c) had been fulfilled. *See Sims v. EGA Prods.*, 475 F.3d 865, 868 (7th Cir. 2007) (observing that to set aside a default entry under Rule 55(c), there needs to be good cause for the judicial action); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2692 at 88 (3d ed. 1998) ("The motion to set aside a default entry . . . may be granted for 'good cause shown,' which gives a court greater freedom in granting relief than is available in the case of default judgments.").

## B.

We next address Mr. Cracco's claim that the district court did not act properly when it deemed admitted Paragraph 33 of Vitran's Rule 56.1 statement of material

facts. Rule 56.1 requires that a party moving for summary judgment file and serve on the nonmoving party several documents, including "a statement of material facts as to which the moving party contends there is no genuine issue and that entitles the moving party to a judgment as a matter of law." N.D. Ill. R. 56.1(a)(3). The Rule provides that the statement "shall consist of short numbered paragraphs." N.D. Ill. R. 56.1(a). The opposing party is required to file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. R. 56.1(b)(3)(b). When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). "Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules." *FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). *See also Koszola*, 385 F.3d at 1109; *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (collecting cases).[2]

---

[2] *Cf. Ammons v. Aramark Unif. Servs.*, 368 F.3d 809, 818 (7th Cir. 2004) (holding that a nonmoving party's response that factual allegations in the moving party's statement of material facts were irrelevant did not excuse the nonmoving party from

(continued...)

Mr. Cracco submits that, because Paragraph 33 listed seven different alleged problems with his performance, it was impossible for him either to admit or to deny the paragraph. Paragraph 33 violated Rule 56.1(a), Mr. Cracco maintains, because it was not "short and concise." *See* N.D. Ill. R. 56.1(a). He therefore contends that the district court erred in deeming Paragraph 33 admitted.

We cannot accept Mr. Cracco's argument. The Northern District of Illinois has stated: "[T]he numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response." *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000). However, the district court must apply Rule 56.1 in the specific context of the litigation before it and determine whether the submission at issue adequately complies with the purpose and intent of the Rule or impedes that Rule's effectiveness.

When the district court's decision is assessed in this manner, we believe that it is clear that there was no abuse of discretion in determining that Mr. Cracco had failed to dispute adequately the facts set out in Paragraph 33. Rule 56.1 required Mr. Cracco to admit or deny each

---

[2] (...continued)

indicating whether it admitted or denied the allegations); *In re Motorola Sec. Litig.*, 505 F. Supp. 2d 501, 504 n.1 (N.D. Ill. 2007) (treating the lead plaintiff's statement of additional facts as admitted by the defendants, where the defendants objected to the statements on several grounds, but failed to cite to the record in support of a specific denial).

factual statement proffered by Vitran. *See Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001). "Employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes." *Id.* (quotation marks omitted). The district court acted well within its discretion in concluding that the paragraph, as a practical matter, related to the single allegation that Vitran employees found the terminal to be in a state of disarray. The district court no doubt *could* have required that Vitran "unbundle" the factual allegation in Paragraph 33, but its determination that such "unbundling" was not a necessary predicate to Mr. Cracco's compliance with the rule was, in the context presented here, hardly an abuse of discretion.

## C.

We now turn to the district court's grant of summary judgment for Vitran on Mr. Cracco's FMLA retaliation claim. We review de novo the district court's grant of summary judgment to Vitran, construing all facts and reasonable inferences in Mr. Cracco's favor. *See Autozone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Mr. Cracco sought to establish retaliation under both the direct and indirect methods of proof. *See Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 771 (7th Cir. 2008).

**1. Direct Method**

To establish a prima facie case of retaliatory discharge under the direct method, Mr. Cracco was required to establish that: (1) he engaged in a protected activity; (2) Vitran took adverse employment action against him; and (3) there is a causal connection between Mr. Cracco's protected activity and Vitran's adverse employment action. *See Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 850 (7th Cir. 2008). Under the direct method, "proof of discrimination is not limited to near-admissions by the employer that its decisions were based on a proscribed criterion," but rather, includes "circumstantial evidence which suggests discrimination albeit through a longer chain of inferences." *Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1052 (7th Cir. 2006).

Mr. Cracco maintains that circumstantial evidence establishes that he was terminated for taking medical leave under the FMLA. He contends that the causal link between his taking leave and Vitran's terminating his employment is demonstrated by the fact that he was terminated on the morning that he returned from leave. *See King v. Preferred Tech. Group*, 166 F.3d 887, 893 (7th Cir. 1999). Mr. Cracco emphasizes that he had a fifteen-year record of positive work reviews prior to taking FMLA leave, an assertion that is supported by the testimony of his former supervisor, Webber.[3] Mr. Cracco further ob-

---

[3] *Cf. Lang v. Ill. Dep't of Children & Family Servs.*, 361 F.3d 416, 419-20 (7th Cir. 2004) (noting that the plaintiff's positive five-

(continued...)

serves that Vitran's decision to terminate him was made while he was on leave.

It is undisputed that Mr. Cracco engaged in a protected activity when he took FMLA leave and that he suffered an adverse employment action when his employment was terminated. Therefore, we need only determine whether the record established by Mr. Cracco supports the inference that Mr. Cracco established a causal connection between the two events. In the context of this record, the timing of the discharge does not constitute relevant and probative evidence of a causal link. Here, it is undisputed that the information Vitran relied upon in determining that Mr. Cracco was responsible for the Markham terminal problems was discovered by Vitran *after* Mr. Cracco took leave. Vitran presented evidence supporting its claim that it believed, on the basis of its investigation, that Mr. Cracco had been covering up shipment problems and was the cause of the problems in the terminal.[4] In the context of interference with FMLA rights, we

---

[3] (...continued)
year work record plus the timing of his baseless "unauthorized absence" raised the inference of causation); *Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir. 2005) (noting that the timing of the plaintiff's termination, coupled with her recent positive performance evaluation, contributed to an inference of causation).

[4] The parties dispute whether Mr. Cracco actually caused the problems in the terminal. What is important for our analysis, however, is the fact that Vitran *believed* that the problems at
(continued...)

have held that "[t]he fact that the leave permitted the employer to discover the problems can not logically be a bar to the employer's ability to fire the deficient employee." *Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 806 (7th Cir. 2001).[5] If the FMLA allows an employer to base adverse employment actions on performance problems discovered while the employee is on leave, the fact that the employer discharges the employee when he returns from leave cannot be sufficient evidence to establish causation. Otherwise, the employer would be forced to continue employing a substandard employee after the conclusion of leave or risk facing liability under the FMLA.

In this case, Vitran discovered problems at the Markham terminal after Mr. Cracco took FMLA leave. It then began an investigation, came to believe that Mr. Cracco was responsible for the problems and terminated his employment upon his return to work. Such a situation is not

---

[4] (...continued)

the terminal were caused by Mr. Cracco disguising late and damaged deliveries. *See Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 829 (7th Cir. 2007) (noting that an employee proceeding under the direct method must show the employee's decision was based on a prohibited animus).

[5] *See also Armstrong v. Sys. Unlimited, Inc.*, 75 Fed. Appx. 550, 551 (8th Cir. 2003) (affirming summary judgment in favor of the employer on a retaliation claim where the employee had performance problems prior to taking leave and the employer discovered additional problems during the employee's leave).

sufficient to establish a causal connection under the direct method of proving retaliation because these actions do not suggest that Vitran management was acting under a prohibited animus. *See Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 829 (7th Cir. 2007).

Mr. Cracco's prior positive performance history likewise does not support causality, given that Vitran discovered problems at the terminal after Mr. Cracco took FMLA leave. Although the parties dispute whether Mr. Cracco was the cause of the problems that Vitran discovered, the existence of positive performance reviews do not prohibit Vitran from relying on newly uncovered evidence in its decision to terminate his employment. *See Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1262 (7th Cir. 1993). Mr. Cracco simply has not put forth a "convincing mosaic" of direct or circumstantial evidence to show that Vitran acted with discriminatory intent. *See Ridings*, 537 F.3d at 769.

## 2. Indirect Method

Under the indirect method of proving retaliation, Mr. Cracco may create a presumption of discrimination by establishing a prima facie case of discrimination. *See Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008). To do so, Mr. Cracco must demonstrate: (1) he engaged in statutorily protected activity; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *See Andonissamy*, 547

F.3d at 850. This presumption shifts the burden to Vitran to produce a legitimate, noninvidious reason for its actions. *See Atanus*, 520 F.3d at 672. If Vitran satisfies its burden of production by rebutting its prima facie case of discrimination, the burden then shifts back to Mr. Cracco to show that Vitran's reasons "are false and only a pretext for discrimination." *See id.* (quotation marks omitted).

The first and third elements of the prima facie case are not in dispute. Having taken FMLA leave, Mr. Cracco is a member of a protected class and was subject to an adverse employment action when his employment was terminated.

Mr. Cracco's case fails, however, with respect to the second element of the test; he has not demonstrated that he was meeting Vitran's legitimate job expectations when he was discharged. Mr. Cracco emphasizes that his job performance history was positive prior to his taking leave. However, the relevant inquiry is Mr. Cracco's job performance history as known to Vitran *at the time of his termination*. *See Hong*, 993 F.2d at 1262. There is undisputed evidence that Vitran discovered problems in the terminal during Mr. Cracco's leave, investigated the problems and determined that Mr. Cracco was responsible for those deficiencies. Mr. Cracco cannot show that he met his employer's legitimate job expectations at the time that he was discharged, and, therefore, he cannot satisfy the second element.

Mr. Cracco is also unable to show that he was treated less favorably than similarly situated employees. Although

he states that "[n]o other employee at Vitran was ever terminated for the reasons that the Plaintiff was allegedly terminated for," Appellant's Br. 37, he is not relieved of the responsibility to point to a similarly situated individual. To determine whether two employees are directly comparable for a retaliation claim, we look at "all the relevant factors, which most often include whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision." *Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 532 (7th Cir. 2003). Mr. Cracco did not show that Vitran retained another Service Center Manager who did not take leave and was not terminated for poor performance. Consequently, Mr. Cracco cannot establish a prima facie case of retaliation. The district court correctly granted summary judgment against Mr. Cracco on his retaliation claim.

**D.**

We now examine Mr. Cracco's interference claim. The FMLA allows an eligible employee to take up to twelve weeks of leave during any twelve-month period if the employee is unable to perform the functions of his position on account of a serious health condition. *De la Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 686 (7th Cir. 2008). Eligible employees are entitled to reinstatement upon return from leave. 29 U.S.C. § 2614(a)(1);

*Kohls*, 259 F.3d at 804. It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided." 29 U.S.C. § 2615(a)(1).

When an employee alleges that his employer interfered with his substantive rights under the FMLA, he must establish that: "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). Both parties agree that Mr. Cracco has established the first four prongs of the interference test; they dispute whether Vitran denied Mr. Cracco a benefit to which he was entitled by terminating his employment when he returned from leave.

An employee's right to return to work after taking leave is not unlimited; he is not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B). *See also* 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period."). The employer therefore may present evidence to show that the employee would not have been entitled to his position even if he had not taken leave; the employee then must overcome the em-

ployer's assertion. *Kohls*, 259 F.3d at 804. The fact that the leave permitted the employer to discover the problems does not bar the employer's ability to terminate the deficient employee. *Id.* at 806; *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1018 (7th Cir. 2000). *See also Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005) (holding that "an employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights").

Vitran has set forth substantial evidence that Mr. Cracco was not entitled to resume his employment upon his return from leave because the company had, after an investigation, determined that he had not performed his duties in a competent manner prior to the commencement of his leave. Although Mr. Cracco disputes the results of this investigation, he has offered no evidence to dispute that the investigation began, and his shortcomings were discovered, after his leave period commenced. Vitran submitted evidence that several employees noticed discrepancies in the shipment records and found problems at the facility under Mr. Cracco's management. Mr. Cracco did not come forward with evidence that would lead a reasonable trier of fact to conclude that the reports of misfeasance did not take place or that Vitran's investigation of those allegations was not a bona fide attempt to assess their accuracy. Because Mr. Cracco presented no evidence supporting his assertion that he would have retained his job had he

not taken FMLA leave, his interference claim fails. *See Rice*, 209 F.3d at 1018.[6]

## Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

---

[6] Mr. Cracco also submits that the district court erred in treating as admissible printouts of computer screens and printouts of shipment delivery receipts that Vitran included with its motion for summary judgment. We need not decide the admissibility of these documents, however, because the district court did not rely upon them in granting summary judgment for Vitran.

---