In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 22-1822

DEBORAH JOHNSON, Individually as the Representative of the
Estate of Bruce Johnson,

*Plaintiff-Appellant*,

*v.*

EDWARD ORTON, JR. CERAMIC FOUNDATION,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cv-06937 — **Mary M. Rowland**, *Judge*.

———————————

ARGUED DECEMBER 8, 2022 — DECIDED JUNE 20, 2023

———————————

Before RIPPLE, ROVNER, and WOOD, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Deborah Johnson initially brought
this product liability action in state court against Edward Or-
ton, Jr. Ceramic Foundation ("Orton"). She alleged that her
late husband, Bruce Johnson, contracted mesothelioma as a
result of exposure to asbestos contained in vermiculite pack-
aging material used by Orton. Orton removed the action to
federal court, and, in due course, the district court granted

summary judgment for Orton. It held that, under applicable Illinois state law, Orton did not owe a duty to Mr. Johnson.

For the reasons set forth in the following opinion, we reverse the judgment of the district court and remand this case for further proceedings consistent with this opinion.

# I

## BACKGROUND

### A.

Orton manufactures and sells pyrometric cones, which are used to measure the temperature of a kiln during the firing of ceramic products. Orton ships the cones to its customers in cardboard boxes filled with packaging material intended to keep the cones from breaking. From 1963 to 1975 and from 1979 to 1981, Orton purchased the mineral vermiculite from W.R. Grace & Co. ("W.R. Grace") to use as its packaging material. From 1975 to 1979 and from 1982 to 1983, Orton purchased vermiculite packaging from a different company, J.P. Austin. In 1983, Orton transitioned to using micro-foam as its packaging material because the vermiculite caused too much dust in Orton's facility.

The record traces the route that the vermiculite traveled from its initial mining to its arrival on Mr. Johnson's worktable. W.R. Grace operated a vermiculite mine near Libby, Montana. It acquired this mine from the Zonolite Company, which had begun mining vermiculite in Libby in 1925. The mine site also contained deposits of asbestos. The vermiculite made its way to W.R. Grace's facility in Wilder, Kentucky. Orton, in turn, received its shipments of vermiculite from that facility.

In September 1981, Orton requested and received a Material Safety Data Sheet ("Data Sheet") from W.R. Grace. The Data Sheet stated that the vermiculite originated from Libby, Montana, and contained less than 0.1% by weight of asbestos. There is no evidence that the J.P. Austin vermiculite contained any asbestos.

Bruce Johnson was a ceramics artist and teacher. From 1971 to 1984, Mr. Johnson studied and then worked with ceramics, and, as part of that work, he used pyrometric cones manufactured by Orton.[1] In his deposition, Mr. Johnson testified that the boxes in which he received the cones were filled almost to the brim with vermiculite, that the cones and vermiculite were "intermixed together," and that he had to dig through the vermiculite to find the cones.[2] Sometimes, if the box was almost empty, he would pour out the contents and then pull out the cone. Mr. Johnson described the vermiculite as "very fragile" and stated that "it would always create some dust," which would be "in [his] face when [he] would work on it at the table."[3]

According to the complaint, Mr. Johnson was diagnosed with malignant mesothelioma, which is almost always caused by exposure to asbestos, on March 3, 2017. He died of the disease on January 6, 2020.

---

[1] Although Ms. Johnson notes that Mr. Johnson began studying ceramics in 1968, the parties submitted below, and the record supports, that Mr. Johnson used Orton pyrometric cones in his ceramics work from 1971 to 1984.

[2] R.126-4 at 225:21, 227:11–14, 228:21–23.

[3] *Id.* at 228:1–9.

**B.**

In November 2018, the Johnsons filed a complaint in the Circuit Court of Cook County, Illinois, against eleven defendants, alleging that Mr. Johnson contracted mesothelioma as a result of exposure to asbestos in the defendants' products. The complaint alleged three theories of liability: negligence, willful and wanton misconduct, and loss of consortium. After settlement with, and dismissal of, several parties, including the last non-diverse defendant, Orton removed the case to the United States District Court for the Northern District of Illinois. Two defendants then remained: Orton and Vanderbilt Minerals, LLC ("Vanderbilt").

After Mr. Johnson's death in January 2020, Ms. Johnson filed her first amended complaint, alleging negligence, including through failure to warn, by the defendants who "manufactured, distributed, or sold asbestos-containing products that were to be used in the production of ceramics."[4] She sought "negligence, wrongful death, and survival damages."[5]

Following discovery, Orton and Vanderbilt moved to exclude, under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), portions of Ms. Johnson's expert testimony. Before the district court ruled on these *Daubert* motions, Orton filed a motion for summary judgment. Orton argued that it was entitled to summary judgment because it did not owe any legal duty to Mr. Johnson and because Ms. Johnson could not prove that Mr. Johnson's exposure to asbestos through the

---

[4] R.58 ¶ 9.

[5] *Id.* ¶ 19.

vermiculite packaging was a substantial factor in causing his disease.[6]

On June 25, 2021, the district court granted Orton's motion for summary judgment and denied Orton's *Daubert* motions as moot. The court concluded that Ms. Johnson had failed to raise any question of fact to support her contention that Orton owed a duty to Mr. Johnson. Specifically, the court held that Ms. Johnson did not establish that Orton knew, or should have known, that W.R. Grace was supplying vermiculite from Libby or that Libby vermiculite was contaminated with asbestos. The court also rejected Ms. Johnson's argument that Orton should be treated as a manufacturer of the vermiculite packaging and thus "held to the degree of knowledge and skill of experts" in ensuring that its product was reasonably safe.[7] Because Orton was not a manufacturer of vermiculite, the court explained, it should be held to the standard of knowledge of the ceramics industry, and Ms. Johnson had "failed to provide meaningful evidence that vermiculite was commonly used in ceramics" or that participants in the ceramics industry were aware that Libby's vermiculite was contaminated.[8] The district court did not reach the causation issue.

---

[6] The parties discussed Ms. Johnson's willful-and-wanton and loss-of-consortium claims in their summary judgment briefing. The district court did not address these claims in its summary judgment order and the parties do not raise them on appeal.

[7] R.132 at 8 (quoting *Anderson v. Hyster Co.*, 385 N.E.2d 690, 692 (Ill. 1979)).

[8] *Id.* at 11.

Ms. Johnson filed a motion for reconsideration. In denying this motion, the district court first rejected Ms. Johnson's argument that it had relied upon inadmissible evidence in finding that Orton had not received the Data Sheet from W.R. Grace earlier than 1981. The support for the facts in paragraphs 20 and 22 of Orton's statement of facts, on which the court had relied for this finding, was the deposition of an Orton corporate representative, James Gary Childress. Because Ms. Johnson had not denied the facts in paragraphs 20 and 22, the court stated that it properly had deemed them admitted. It also rejected her challenge to its conclusion that Orton was not a vermiculite manufacturer. The court further declined to consider Ms. Johnson's "new argument—made without any evidentiary support—that Orton made purchases of vermiculite from W.R. Grace after September 1981 and used the material until at least May 1982 without providing a warning."[9] Other arguments raised by Ms. Johnson, the court concluded, inappropriately rehashed arguments she already had advanced in opposition to Orton's motion for summary judgment.

On December 15, 2021, after the district court had granted some of Vanderbilt's *Daubert* motions, Ms. Johnson and Vanderbilt filed a stipulation to dismiss Vanderbilt. In that stipulation, they agreed that the district court would retain jurisdiction to enforce the settlement. On December 16, 2021, the district court filed a minute entry stating that it had received the stipulation and, because it could not dismiss with prejudice and retain jurisdiction, it was dismissing without

---

[9] R.147 at 3 n.1.

prejudice until January 31, 2022. The dismissal would convert automatically to a dismissal with prejudice on February 1, 2022.

On April 6, 2022, the district court entered judgment. Ms. Johnson filed a notice of appeal on May 6, 2022.

## II

## DISCUSSION

Ms. Johnson asks us to review the district court's grant of summary judgment for Orton. Before assessing her specific contentions, however, we must determine whether our appellate jurisdiction is secure.

## A.

## Appellate Jurisdiction

Orton submits that we lack appellate jurisdiction because Ms. Johnson's appeal was not timely. Federal Rule of Appellate Procedure 4(a)(1)(A) required Ms. Johnson to file her notice of appeal "within 30 days after entry of the judgment or order appealed from." Here, Federal Rule of Civil Procedure 58(a) requires the judgment to be set forth in a separate document.[10] "A judgment or order is entered" for purposes of appeal "when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a)" and when the earlier of two events occurs: either "the judgment or order is set forth on a separate document" or "150 days have run from entry of the judgment or order in the civil docket."

---

[10] Federal Rule of Civil Procedure 58(a) provides that "[e]very judgment and amended judgment"—with five exceptions not applicable to this case—"must be set out in a separate document."

Fed. R. App. P. 4(a)(7)(ii). "The separate-document require-
ment serves the important purpose of 'clarify[ing] when the
time for appeal … begins to run.'" *Levy v. W. Coast Life Ins. Co.*,
44 F.4th 621, 625 (7th Cir. 2022) (alteration in original) (quot-
ing *Bankers Tr. Co. v. Mallis*, 435 U.S. 381, 384 (1978)).

Orton contends that Ms. Johnson's appeal is untimely be-
cause final judgment was entered, starting a thirty-day clock
for appeal, on one of the following dates: (1) December 15,
2021, when Vanderbilt and Ms. Johnson filed a stipulated dis-
missal; (2) December 16, 2021, when the district court filed a
minute entry acknowledging receipt of the stipulation to dis-
miss, dismissing the action without prejudice until January
31, 2022, and stating that the dismissal would convert auto-
matically to one with prejudice on February 1, 2022; or (3) Feb-
ruary 1, 2022, when the dismissal converted to one with prej-
udice. None of these suggestions, however, can constitute a
final judgment. Instead, final judgment was entered on April
6, 2022, when the district court entered Form AO 450, which
is "the form specifically used for entry of a separate final judg-
ment under Rule 58." *Selective Ins. Co. of S.C. v. City of Paris*,
769 F.3d 501, 507 (7th Cir. 2014); *see also Hope v. United States*,
43 F.3d 1140, 1142 (7th Cir. 1994) (describing Form AO 450 as
"the preferred and sound vehicle for complying with Rule
58"). Ms. Johnson filed her notice of appeal thirty days later,
on May 6, 2022. Therefore, her appeal is timely.

## B.

### The Concept of Duty Under Illinois Law

The basic principles governing our assessment of the mer-
its are well established and need not detain us very long.
Ms. Johnson submits that the district court erred in granting

summary judgment for Orton. We review a grant of summary judgment de novo, construing the evidence and drawing all reasonable inferences in favor of the nonmoving party. *See Richards v. PAR, Inc.*, 954 F.3d 965, 967 (7th Cir. 2020). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022) (quoting *Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 401 (7th Cir. 2018)) (quotation marks omitted). The applicable substantive law determines which facts are material. *See Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). Because federal subject matter jurisdiction is based upon diversity of citizenship, we apply state substantive law. *See Weaver*, 28 F.4th at 820 (citing *Maurer v. Speedway, LLC*, 774 F.3d 1132, 1136 (7th Cir. 2014)). It is undisputed that the substantive law of Illinois applies in this case.

To state a cause of action for negligence under Illinois law, a plaintiff "must allege facts that establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1053 (Ill. 2006) (citing *Bajwa v. Metro. Life Ins. Co.*, 804 N.E.2d 519, 526 (Ill. 2004)). As this case comes to us, we must determine whether Orton owed a duty to Mr. Johnson and whether Orton's vermiculite packaging was a substantial factor in causing Mr. Johnson's illness.

**1.**

We turn now to the concept of "duty" in Illinois tort law. The "touchstone" of the Supreme Court of Illinois's "duty analysis is to ask whether a plaintiff and a defendant stood in such a *relationship* to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1097 (Ill. 2012) (quoting *Marshall*, 856 N.E.2d at 1057) (citing *Krywin v. Chi. Transit Auth.*, 938 N.E.2d 440, 447 (Ill. 2010); *Forsythe v. Clark USA, Inc.*, 864 N.E.2d 227, 232 (Ill. 2007)). The existence of a "relationship" is "a shorthand description for the sum of four factors: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Id.* (citing *Krywin*, 938 N.E.2d at 447; *Forsythe*, 864 N.E.2d at 232; *Marshall*, 856 N.E.2d at 1057). The Supreme Court of Illinois "has long recognized that 'every person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons.'" *Id.* (quoting *Widlowski v. Durkee Foods, Div. of SCM Corp.*, 562 N.E.2d 967, 968 (Ill. 1990)) (citing *Forsythe*, 864 N.E.2d at 238; *Kahn v. James Burton Co.*, 126 N.E.2d 836, 840 (Ill. 1955)).

"A manufacturer has a nondelegable duty to design a reasonably safe product.*" Jablonski v. Ford Motor Co.*, 955 N.E.2d 1138, 1154 (Ill. 2011) (citing *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 264 (Ill. 2007)). In a negligent-design case, the key question is "whether the manufacturer exercised reasonable

care in designing the product," which comes down to "whether in the exercise of ordinary care the manufacturer should have foreseen that the design would be hazardous to someone." *Id.* (quoting *Calles*, 864 N.E.2d at 264). "To show that the harm was foreseeable, the plaintiff must show that 'the manufacturer knew or should have known of the risk posed by the product design at the time of manufacture' of the product." *Id.* (quoting *Calles*, 864 N.E.2d at 264) (citing *Sobczak v. General Motors Corp.*, 871 N.E.2d 82, 94 (Ill. App. Ct. 2007)).

Furthermore, "[a] manufacturer has a duty to warn where the product possesses dangerous propensities and there is unequal knowledge with respect to the risk of harm, and the manufacturer, possessed of such knowledge, knows or should know that harm may occur absent a warning." *Sollami v. Eaton*, 772 N.E.2d 215, 219 (Ill. 2002) (citing *Goldman v. Walco Tool & Eng'g Co.*, 614 N.E.2d 42, 49 (Ill. App. Ct. 1993); *Smith v. Am. Motors Sales Corp.*, 576 N.E.2d 146, 151 (Ill. App. Ct. 1991)). In a failure to warn case against a manufacturer, *whether based in strict liability or negligence*,

> [t]he inquiry becomes whether the manufacturer, because of the "present state of human knowledge" (Restatement (Second) of Torts [§] 402A, [cmt.] *k* (1965)), knew or should have known of the danger presented by the use or consumption of a product. Once it is established that knowledge existed in the industry of the dangerous propensity of the manufacturer's product, then the plaintiff must establish that the defendant did not warn, in an adequate manner, of the danger.

*McKinney v. Hobart Bros. Co.*, 127 N.E.3d 176, 187 (Ill. App. Ct. 2018) (alteration in original) (quoting *Woodill v. Parke Davis & Co.*, 402 N.E.2d 194, 198 (Ill. 1980)).

**2.**

To determine whether Orton owed a duty to Mr. Johnson, we must decide whether the record will support a conclusion that Orton knew, or should have known, that W.R. Grace's vermiculite packaging was contaminated with asbestos.[11] We will consider separately the time periods before and after September 1981, the date when Orton received the Data Sheet from W.R. Grace.[12]

We turn first to the period before September 1981. Here, our first inquiry is whether, on this record, a factfinder could conclude that Orton *actually knew* about the dangers of its

---

[11] The parties do not ask us to decide whether Orton knew or should have known about the health risks associated with the exposure to asbestos. *Cf. Cahoon v. Edward Orton, Jr. Ceramic Foundation*, No. 2:17-CV-63-D, 2020 WL 918753, at *8 (E.D.N.C. Feb. 24, 2020) (granting summary judgment for Orton because the plaintiff's evidence did not demonstrate that Orton "knew that its vermiculite was tied to a specific health risk of mesothelioma," as required by North Carolina law).

[12] In her appellate brief, Ms. Johnson cites sources, such as U.S. Environmental Protection Agency webpages, that she did not cite in the district court to support, for example, the proposition that W.R. Grace's mining operation at Libby was the largest in the world. We consider only evidence that was presented properly to the district court, as "[e]vidence that was not proffered to the district court in accordance with its local rules is not part of the appellate record." *McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 795 (7th Cir. 1997) (citing *Henn v. Nat'l Geographic Soc'y*, 819 F.2d 824, 831 (7th Cir. 1987)).

vermiculite packaging before it received the Data Sheet. The district court thought that there was a simple and direct answer to this issue: Ms. Johnson had failed to contest the facts stated in paragraphs 20 and 22 of Orton's statement of material facts, and these facts were therefore deemed admitted.[13] Consequently, Ms. Johnson had admitted that Orton received the Data Sheet, which is dated June 10, 1977, no earlier than 1981.

---

[13] Northern District of Illinois Local Rule 56.1 requires that each party moving for summary judgment file a statement of material facts and that each party opposing a summary judgment motion file a response to that statement. *See* N.D. Ill. R. 56.1(a)(2), (b)(2)–(3). "Each response must admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact." N.D. Ill. R. 56.1(e)(2). "To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." N.D. Ill. R. 56.1(e)(3). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) (quoting *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009)). "The non-moving party's failure to admit or deny facts as presented in the moving party's statement or to cite to any admissible evidence to support facts presented in response by the non-moving party render the facts presented by the moving party as undisputed." *Id.* at 218–19 (citing *Ammons v. Aramark Unif. Servs.*, 368 F.3d 809, 818 (7th Cir. 2004)). "We review a trial court's decisions regarding compliance with local rules only for an abuse of discretion." *Id.* at 219 (7th Cir. 2015) (citing *Cracco*, 559 F.3d at 630; *Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1108 (7th Cir. 2004)). "[R]equiring strict compliance with Rule 56.1 is not an abuse of the district court's discretion." *Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016) (citing *Ammons*, 368 F.3d at 817).

Paragraphs 20 and 22 of Orton's statement of facts, filed in support of its motion for summary judgment, stated:

> 20. In September 1981, Orton requested, and W.R. Grace sent a Material Safety Data Sheet (MSDS) to Orton. The MSDS, said that the vermiculite may contain trace amounts (less than .1% by weight) of tremolite asbestos. Childress Dep. at 166–68 (Ex. E).
>
> …
>
> 22. Prior to 1981, as a non-profit charitable trust foundation, Orton never knew, nor had reason to suspect, that W.R. Grace's vermiculite came from the Libby, Montana mine, or that any vermiculite Orton may have used may have been contaminated with asbestos. In fact, Orton received its shipments of vermiculite packaging from Wilder, Kentucky. *Id.* at 181–93 (Ex. E).[14]

Ms. Johnson did not deny these facts in her response. Her response to paragraph 20 instead cited evidence concerning the asbestos-exposure levels that resulted from disturbing Orton's vermiculite and the risk of mesothelioma caused by such exposure. Ms. Johnson's response to paragraph 22 first detailed Orton's history and then discussed Orton's use of vermiculite as a packaging material. She stated that Orton began packing its pyrometric cones in "asbestos-containing vermiculite" in 1963.[15] She described vermiculite as a "mineral

---

[14] R.122 ¶¶ 20, 22.

[15] R.127 ¶ 22.

composed of shiny flakes" that "is odorless, lightweight, fire-resistant, and … commonly used in all aspects of the ceramics industry."[16] She stated that Orton obtained vermiculite from "W.R. Grace/Zonolite and J.P. Austin," with W.R. Grace vermiculite being purchased "from March 1963 until June 1975 and then again from September 1979 until December 1981."[17] Finally, she noted that in 1983—"almost 12 years after OSHA's first emergency standard regarding asbestos exposure in the workplace"—Orton began using "Micro-foam" instead of vermiculite because "the asbestos-containing vermiculite it was using caused too much dust in its manufacturing facility."[18] This response did not deny clearly the facts in paragraphs 20 and 22. The district court therefore properly deemed those facts admitted and concluded that Orton received the Data Sheet no earlier than 1981. The record is devoid of other evidence establishing that Orton had actual knowledge of the contamination of the W.R. Grace vermiculite before receiving the Data Sheet in September 1981.[19]

---

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] We also note that Ms. Johnson forfeited any challenge to the district court's finding that she admitted paragraphs 20 and 22 because she did not raise the issue until her reply brief in this court. *See, e.g., Hackett v. City of South Bend*, 956 F.3d 504, 510 (7th Cir. 2020) (citing *Webster v. CDI Ind., LLC*, 917 F.3d 574, 578 (7th Cir. 2019); *Klein v. O'Brien*, 884 F.3d 754, 757 (7th Cir. 2018); *Ulrey v. Reichhart*, 941 F.3d 255, 260 (7th Cir. 2019)) ("An appellant who does not address the rulings and reasoning of the district court forfeits any arguments he might have that those rulings were wrong.").

We now turn to whether the record supports a conclusion that, prior to 1981, Orton had constructive knowledge of the possible presence of asbestos in the vermiculite. Here, the inquiry is whether Orton *should have known* about the dangers of its vermiculite packaging prior to September 1981. The parties do not argue that we are constrained by Ms. Johnson's failure to contest paragraphs 20 and 22 of Orton's statement of facts. Their restraint is well-taken. Although paragraph 22 contains the phrase "nor had reason to suspect," it is well established in American tort law that such a phrase has a fixed meaning and does not address the concept of constructive knowledge. Specifically, § 12 of the Restatement (Second) of Torts defines "reason to know" and "should know":

> (1) The words "reason to know" are used throughout the Restatement of this Subject to denote the fact that the actor has information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists.

> (2) The words "should know" are used throughout the Restatement of this Subject to denote the fact that a person of reasonable prudence and intelligence or of the superior intelligence of the actor would ascertain the fact in question in the performance of his duty to another, or would govern his conduct upon the assumption that such fact exists.

Restatement (Second) of Torts § 12 (Am. L. Inst. 1965). Comment a to § 12 further explains the difference between these two phrases:

> Both the expression "reason to know" and "should know" are used with respect to existent facts. These two phrases, however, differ in that "reason to know" implies no duty of knowledge on the part of the actor whereas "should know" implies that the actor owes another the duty of ascertaining the fact in question. "Reason to know" means that the actor has knowledge of facts from which a reasonable man of ordinary intelligence or one of the superior intelligence of the actor would either infer the existence of the fact in question or would regard its existence as so highly probable that his conduct would be predicated upon the assumption that the fact did exist. "Should know" indicates that the actor is under a duty to another to use reasonable diligence to ascertain the existence or non-existence of the fact in question and that he would ascertain the existence thereof in the proper performance of that duty.

*Id.* § 12 cmt. a. "Reason to suspect," the precise terminology employed in paragraph 22, addresses the same concept as "reason to know." It conveys no sense that the actor is under a duty to another to employ "reasonable diligence to ascertain the existence or non-existence of the fact in question." *Id.*

In addressing whether Orton had a duty to apprise itself of the possibility that asbestos had infected the vermiculite that it was using as a packaging material for its product, our

first task is to identify the standard of knowledge that should be expected of Orton. In Illinois, "[a] manufacturer is held to the degree of knowledge and skill of experts," *Anderson v. Hyster Co.*, 385 N.E.2d 690, 692 (Ill. 1979) (citing *Lewis v. Stran Steel Corp.*, 311 N.E.2d 128, 132 (Ill. 1974)), and therefore has a duty "to keep abreast of scientific developments touching upon the manufacturer's product," *Proctor v. Davis*, 682 N.E.2d 1203, 1211 (Ill. App. Ct. 1997) (quoting *Schenebeck v. Sterling Drug, Inc.*, 423 F.2d 919, 922 (8th Cir. 1970)).

The district court did not impose this duty on Orton. In its view, Orton should not be considered a "manufacturer" with respect to the vermiculite packaging. It saw Orton's role as "more analogous to that of a seller of vermiculite who placed reasonable trust in the supplier."[20] On this point, we find ourselves in respectful disagreement with our colleague in the district court. It is undisputed that Orton was the manufacturer of the pyrometric cones that it sold to Mr. Johnson. Under Illinois law, because Orton manufactured the pyrometric cones, "it was under a duty to so prepare" the package of pyrometric cones so that they "could be transported to the destination where [the cones] were to be used without exposing others to unreasonable danger." *Lewis*, 311 N.E.2d at 132.[21]

---

[20] R.132 at 11.

[21] Orton questions the relevancy of *Lewis* to this case because, it submits, Ms. Johnson brings only a failure-to-warn claim. She has not limited her case in this way. *See* R.58 ¶ 12 (alleging, in her amended complaint, that Orton "failed to exercise ordinary care and caution for the safety of Mr. Johnson" when it "[i]ncluded asbestos in [its] products," "[f]ailed to provide any or adequate warnings" or "instructions," and "[f]ailed to conduct tests on the products manufactured, sold, or delivered"); R.126 at 12 (noting, in her memorandum opposing summary judgment, that a

The district court's consideration of the degree of knowledge required of Orton may well have been impeded by the paucity of *negligence* cases. "Illinois cases considering a cause of action for defective products liability sounding in negligence rather than strict liability are rare." *Blue v. Env't Eng'g, Inc.*, 828 N.E.2d 1128, 1141 (Ill. 2005) (plurality opinion). But this paucity of negligence cases should not be an impediment. Illinois courts have made clear that whether a failure to warn claim is brought under a negligence or strict liability theory, the knowledge requirement is the same. *See McKinney*, 127 N.E.3d at 187. In both cases, the animating policy concern is to ensure that "where the product possesses dangerous propensities and there is unequal knowledge with respect to the risk of harm … the manufacturer, possessed of such knowledge," must warn of the danger. *Sollami*, 772 N.E.2d at 219.

Orton attempts to support the district court's view by suggesting that, even if the vermiculite packaging is considered part of its "product," it should be held to the standard of knowledge of the ceramics industry. Orton reads the Illinois cases as holding that what a defendant "should have known comes down to what was known in the industry of which defendant was a part." *McKinney*, 127 N.E.3d at 187 (citing *Woodill*, 402 N.E.2d at 198). We believe, however, that it is

---

manufacturer has "a non-delegable duty to design reasonably safe products" and that Orton "had the duty to provide an asbestos free product to end-users like Mr. Johnson or, in the alternative, provide an adequate warning about the presence of asbestos in its products" and citing *Calles v. Scripto-Tokai Corp.*, 832 N.E.2d 409, 416 (Ill. App. Ct. 2005), and *Anderson*, 385 N.E.2d at 692).

more precise to say that Illinois considers the industry-knowledge standard to focus on the state of the art. *See Daniels v. ArvinMeritor, Inc.*, 146 N.E.3d 655, 677 (Ill. App. Ct. 2019) ("In *McKinney*, the plaintiff's theory of duty was that the defendant should have known of the danger based on what was known in the industry, *i.e.* the state of the art. … The *Woodill* court reasoned that a manufacturer could not be held liable for failure to warn of a danger which it would be impossible to know based on existing knowledge."). The Supreme Court of Illinois explained in *Woodill* that a manufacturer's liability for a failure to warn "should be based on there being some manner in which to know of the danger." *Woodill*, 402 N.E.2d at 200. The relevant inquiry, the court held, is

> whether the manufacturer, because of the "present state of human knowledge" (Restatement (Second) of Torts sec. 402A, comment k (1965)), knew or should have known of the danger presented by the use or consumption of a product. Once it is established that knowledge existed in the industry of the dangerous propensity of the manufacturer's product, then the plaintiff must establish that the defendant did not warn, in an adequate manner, of the danger.

*Id.* at 198.

Notably, Orton points to no authority where a defendant's negligence was excused because the industry to which it belonged had less knowledge. Instead, the Illinois case law, including *Woodill* and *McKinney*, provides that what a manufacturer knew or should have known is determined by the "present state of human knowledge" at the time. *Id.* (quoting Restatement (Second) of Torts § 402A cmt. k (Am. L. Inst. 1965)).

Because Orton's duties as a manufacturer extended to ensuring that its pyrometric cones were transported reasonably safely, *see Lewis*, 311 N.E.2d at 132, we must conclude that, given the policy concerns that animate Illinois law, Orton should be held to an expert standard of knowledge with respect to the packaging that it used to ship its pyrometric cones and to which it exposed consumers such as Mr. Johnson.

The record before us would support a trier-of-fact's conclusion that, at the time Orton was using the W.R. Grace packaging material before 1981, it was possible, based on the present state of human knowledge, for Orton to know that the W.R. Grace vermiculite was contaminated with asbestos. Articles published prior to 1963 (when Orton began purchasing W.R. Grace vermiculite) described the vermiculite mining operation of the Zonolite Company, W.R. Grace's predecessor, at Libby and noted the presence of amphibole asbestos at the site.[22] One bulletin published by the Montana Bureau of Mines and Geology in 1959, for example, described the Zonolite Company's operations in Libby as the "largest vermiculite mine in the United States" and explained that "the bulk of the concentrate [was] shipped as crude vermiculite to expanding plants throughout the country."[23] The bulletin noted the presence of both vermiculite and asbestos at the site as well as the need for a process "to make a clean separation" of the two materials.[24] Furthermore, the date printed on the Data

---

[22] *See* R.126-1 at 2–3, 11; R.126-2 at 5; R.126-8 at 3–4; R.126-9 at 3; R.126-10 at 3, 6–8.

[23] R.126-8 at 3.

[24] *Id.* at 4.

Sheet, which stated the source and contamination of W.R. Grace's vermiculite, suggests that W.R. Grace prepared the form on June 10, 1977. Air monitoring conducted in 1971 by the Kentucky State Department of Health in one part of W.R. Grace's vermiculite processing facility in Wilder, Kentucky, also showed levels of airborne asbestos fibers as high as 10.6 fibers per cubic centimeter.[25]

In sum, although the record will not support a finding that, prior to receiving the Data Sheet in 1981, Orton had actual knowledge of the contamination of W.R. Grace's vermiculite, it will support a finding that, based on the state of human knowledge between 1963 and 1981, Orton should have known of the contamination. There is a genuine issue of triable fact as to whether Orton had constructive knowledge of the possible presence of asbestos in the vermiculite that it purchased from W.R. Grace prior to 1981.

We next consider whether the record supports a conclusion that Orton owed Mr. Johnson a duty *after* receiving the Data Sheet in September 1981. Here, our first task is to determine whether, as Orton submits, Ms. Johnson waived or forfeited this issue in the district court or on appeal. The district court, in its denial of Ms. Johnson's motion for reconsideration, declined to consider Ms. Johnson's "new argument—made without any evidentiary support—that Orton made purchases of vermiculite from W.R. Grace after September 1981 and used the material until at least May 1982 without providing a warning."[26] The district court explained that

---

[25] *See* R.126-11 at 7–8.

[26] R.147 at 3 n.1.

Ms. Johnson could not use a motion for reconsideration to introduce new evidence that could have been presented earlier.

Orton now submits that Ms. Johnson waived, or at least forfeited, the issue in the district court because, according to Orton, she did not argue in her summary judgment response that post-September 1981 vermiculite purchases from W.R. Grace triggered a duty to warn. Furthermore, Orton argues, she has forfeited the argument on appeal because in her initial appellate brief she does not acknowledge the district court's failure to consider her post-September 1981 duty-to-warn argument.

After examining the record, we conclude that Ms. Johnson properly preserved the argument that Orton owed a duty to Mr. Johnson after receiving the Data Sheet in September 1981. In opposing Orton's motion for summary judgment, Ms. Johnson, citing James Gary Childress's deposition, contended that Mr. Johnson's exposures to the asbestos in Orton's vermiculite packaging "occurred from 1971 through 1974 and from 1980 through 1982" and that "[p]urchases from W.R. Grace occurred from March 1963 until June 1975 and then again from September 1979 until December 1981."[27] She also asserted these points repeatedly in her statement of undisputed facts and her response to Orton's statement of undisputed facts. In the cited deposition, Childress, an Orton corporate representative, testified, based on checks written by Orton, that the last purchase of vermiculite from W.R. Grace was in December 1981 and that the next check that was written was to J.P. Austin in May 1982.

_____

[27] R.126 at 2, 5 (citing R.126-3 at 162:1–164:25).

On appeal, Ms. Johnson does not mention the district court's failure to address her post-September 1981 argument in its denial of her motion for reconsideration. Nevertheless, she does argue clearly that Orton had actual knowledge by September 1981 that W.R. Grace's vermiculite contained asbestos yet "placed additional orders for vermiculite from Grace in October and December of 1981" and "continued to use this inventory … for an unknown period thereafter."[28]

Turning then to the merits, we note that Orton admits that, in September 1981, it gained actual knowledge that the vermiculite packaging it purchased from W.R. Grace contained trace amounts of asbestos.[29] The Data Sheet identified the vermiculite packaging material as "Expanded Libby, Montana Vermiculite" and, under the heading "Hazardous Ingredients," stated:

> Contains less than 0.1% by weight of a naturally occurring contaminant tremolite. OSHA Regulation 1910.1001 defines tremolite as asbestos. Some forms of tremolite are platy. Other forms can be fibrillated by physical handling to release

---

[28] Appellant's Br. 33–34.

[29] *See* Appellee's Br. 16 ("Orton did not know until September 1981 that W.R. Grace vermiculite packaging may have had trace amounts of asbestos."); R.122 at 5 ("Orton first learned that vermiculite from W.R. Grace may be contaminated with trace amounts of asbestos in September 1981."); R.123 at 7 ("In September 1981, in response to Orton's request, W.R. Grace sent a Material Safety Data Sheet (MSDS) to Orton, which identified that the vermiculite may contain trace amounts (less than .1% by weight) of tremolite asbestos. This was the first time Orton learned that some of the vermiculite packaging it was using might contain trace amounts of asbestos.") (citation omitted).

airborne "asbestos fibers". Regulation 1910.1001 places a limit of 2 "asbestos fibers"/cc; 8 hour time weighted average and a maximum of 10 "asbestos fibers"/cc at any one time for airborne fiber exposure.

The physical handling given to expanded Vermiculite can release both airborne fibers and nuisance dust. Refer to OSHA Regulation 1910.1001 for approved control procedures.[30]

Under the heading "Special Protection Information," the Data Sheet, citing OSHA Regulation 1910.1001, provided that "[c]ontrols such as isolation; enclosure, exhaust ventilation and dust collection shall be used if necessary to meet exposure limits" and referenced "Personal Protective Equipment for dealing with work environments in excess of exposure limits."[31]

In sum, the district court should not have granted summary judgment on the issue of Orton's duty in the period after September 1981. Orton had actual knowledge during that time period that the W.R. Grace vermiculite was contaminated with asbestos and there is a genuine issue of triable fact as to Orton's continued use of W.R. Grace vermiculite after receiving the Data Sheet.

---

[30] R.126-12 at 2.

[31] *Id.* at 3.

## C.

### Causation

Orton contends that causation is an alternative ground on which we can affirm the district court's grant of summary judgment for Orton. The district court, because it concluded that Orton did not owe a duty to Mr. Johnson, did not reach the question of whether Ms. Johnson can establish causation. We decline to consider the issue of causation in the first instance.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion. Ms. Johnson may recover the costs of this appeal.

REVERSED and REMANDED